## THREATENINC TO ACCUSE ANOTHER OF A CRIME PUNISHABLE BY LAW.

[Circuit Court of Wood County.]

SMITH V. STATE OF OHIO, AND STILL V. STATE OF OHIO.

Decided, April 25, 1903.

*Criminal Law—Indictment Under Section 6830—Threatening to Accuse Another with Arson—What the Indictment Must Aver.*

An indictment charging the defendant with threatening to accuse another of a crime punishable by law, is insufficient under Section 6830, if it avers that the defendant threatened verbally and in writing to accuse such person of arson with intent to defraud, but does not aver that the building, set on fire or burned with felonious intent, was insured, and that the defendant threatened to charge such person with burning it to prejudice the insurer.

HULL, J.; PARKER, J., and HAYNES, J., concur.

Two separate petitions in error were filed in these cases but only one bill of exceptions, and the cases are, to all intents and purposes, one case. The plaintiffs in error were indicted and tried jointly in the court of common pleas on a charge of blackmail under Section 6830, Revised Statutes. They were both found guilty and each sentenced to a term in the penitentiary, and these proceedings in error were brought to reverse that judgment.

It is claimed that the court below erred in overruling a motion to quash the indictment, in overruling a demurrer to the indictment, and that the verdict and judgment are against the weight of the evidence.

First considering the question as to whether the court below should have sustained a demurrer to the indictment, it is claimed that the indictment is bad because it does not charge an offense against the laws of the state of Ohio. As stated, the indictment is founded upon Section 6830, Revised Statutes, which provides that:

"Whoever, either verbally or by any letter or writing, or written or printed communication, sent or delivered by him, demands of any person, with menaces, any chattel, money or valuable security,

or accuses, or knowingly sends or delivers any letter or writing, or any written or printed communication, with or without a name, or with any letter, mark, or designation, accusing or threatening to accuse, any person of a crime punishable by law, or of any immoral conduct which, if true, would tend to degrade and disgrace such person, or to expose or publish any of his infirmities or failings, or in any way to subject him to the ridicule or contempt of society, or to do an injury to the person or property of any person, with intent to extort or gain from such person any chattel, money, or valuable security, or any pecuniary advantage whatsoever, or with intent to compel the person threatened to do any act against his will, with the intent aforesaid, shall be imprisoned in the penitentiary not more than five years nor less than one year, and may be fined not more than $1,000."

The indictment charges, that for the purpose of obtaining money, to-wit, $250, the defendants charged one Cyrus W. Noble with the crime of arson. The indictment avers:

"  *  *  *  did threaten him, the said Cyrus W. Noble, to accuse him, the said Cyrus W. Noble, of having committed the crime of arson, and with having unlawfully set fire to and burned his own hotel building in Hoytsville, Wood county, Ohio, of the value of $1,000, with intent to defraud; which said act and crime is punishable, under the laws of Ohio, by imprisonment in the penitentiary, and which if true would tend to disgrace and degrade him, the said Cyrus W. Noble, by then and there willfully and maliciously and knowingly did verbally say and state to him, the said Cyrus W. Noble, the words followng, to-wit: 'I (meaning him the said Ezra Smith) understand that you (meaning Cyrus W. Noble) said that you would pay anyone that gave you any information about who burned your hotel (meaning the hotel of Cyrus W. Noble in Hoytsville, Wood county, Ohio). We (meaning him the said Ezra Smith and Link Still) think we know who done it. We thought we might make you (meaning him the said Cyrus W. Noble) a party to the burning of it (meaning said hotel building belonging to said Cyrus W. Noble). If you do not give us (meaning the said Ezra Smith and Link Still) $250 we are going to make you (meaning said Cyrus W. Noble) trouble. I will see the other man (meaning said Link Still) about it.'

"And thereafter, on the twenty-sixth day of April of the same year, in pursuance of, and in furtherance of said unlawful confederacy and conspiracy of them, the said Ezra Smith and Link Still, and with the unlawful, willful and malicious purpose to extort money from him, the said Cyrus W. Noble, they, the said Ezra Smith and Link Still, did then and there unlawfully, willfully and

maliciously send to him, the said Cyrus W. Noble, a certain writing without any name subscribed thereto, directed to C. W. Noble, he being the same person as the Cyrus W. Noble aforesaid, and containing a willful and malicious threat, with menaces, to injure him, the said Cyrus W. Noble, by therein accusing him of said crime of arson aforesaid, which said writing is in the words and figures following to-wit:

"HOYTSVILLE, O., 4-26, 1902.

"'MR. C. W. NOBLE: I understand that Ezra Smith (meaning the Ezra Smith heretofore named), our (meaning them the said Ezra Smith and Link Still) head man, was to see you (meaning said Cyrus W. Noble) and you did not * * * it will take money (meaning the money of Cyrus W. Noble aforesaid) before the thirtieth to keep still. Call and see him (meaning said Ezra Smith) or we (maning said Ezra Smith and Link Still) will get your man and you with him. Do not think this is a bluff.' (Thereby meaning that unless the said Cyrus W. Noble would before the thirtieth of April, A. D. 1902, pay and deliver to them the said Ezra Smith and Link Still, said sum of $250 so by them demanded from the said Cyrus W. Noble on the twenty-fourth day of April, A. D. 1902, as aforesaid, they, the said Ezra Smith and Link Still, would cause and procure the arrest and prosecution of him, the said Cyrus W. Noble, for said crime of arson in having unlawfully burned his said hotel building in Hoytsville, Wood county, Ohio, with intent to defraud. With the intent and purpose then and there and thereby unlawfully, willfully and knowingly, by means of said verbal and written communications aforesaid and with the menace aforesaid, to extort money of the amount and value of $250 from the said Cyrus W. Noble.)"

The indictment sets forth fully the words claimed to have been used verbally by the defendants and the writing that it is claimed was sent by the defendants to Dr. Noble, and while the indictment avers that the defendants charged Noble with the crime of arson, it goes on further to state that they charged him with burning his own building; the language set forth in the indictment, and the averments in the indictment show that the defendants did not charge Noble with the crime of arson, and it was not intended in the indictment to charge that they did. The crime of arson is unlawfully burning the building of another, and not one's own building, and is defined in Bouvier's Law Dictionary and also in Section 6831, Revised Statutes. So that it is apparent it is not charged in this indictment that these defendants accused or intended to accuse Dr. Noble of the crime of arson, but that the in-

dictment avers and intends to aver that they did not accuse him and threatened to accuse him of setting fire to and burning his own building, to-wit, "his own hotel building, with intent to defraud," as is alleged in the indictment.

It is claimed by counsel for the State that this is sufficient allegation under the blackmailing statute to charge the offense; that it is not necessary to go into the crime in detail, but that it is sufficient to charge it generally, and that this language is sufficient to come within the language of the blackmail statute which I have read (Section 6830, Revised Statutes), which makes it a crime to make certain threats, either verbal or in writing, to another or to threaten to accuse another of certain things, and among them is the commission of a crime punishable by law, with intent to extort, etc. If the language of the indictment brings the offense charged within the statute, then it is sufficient to sustain it upon demurrer.

The burning of one's own building is not a crime under the laws of this state, unless that building is insured, for there is no statute in this state making it a crime to burn one's own building unless the building is insured and is burned with the intent to prejudice the insurer. This crime is covered by Section 6832, Revised Statutes, which is as follows:

"Whoever maliciously burns or sets fire to any dwelling house, kitchen, smokehouse, shop, office, barn, stable, storehouse, warehouse, still-house, mill, pottery or any other building, of the value of fifty dollars, or any goods, wares, merchandise, or other chattels of the value of fifty dollars, the same being his own property, and insured against the loss or damage by fire, with intent to prejudice the insurer, shall be imprisoned in the penitentiary not more than twenty years."

It is clear that this indictment was intended to charge that these defendants accused and threatened to accuse Doctor Noble with the violation of this section of the statute.

The crime threatened to be charged against Doctor Noble is set forth in the indictment, and the question is whether the language of the indictment does aver and charge that the defendants accused or threatened to accuse Doctor Noble with the commission of a crime; if the language used by the defendants did not accuse Doctor Noble with the commission of a crime, then it was not a crime or an offense tending to degrade or disgrace him for them to say what

they did to Doctor Noble. The statute does not make it a crime to make any threats against another person or to accuse another person of anything that he may be threatened with or accused of, but the statute sets forth what threats must be to constitute an offense under the statute. This offense was formerly called in the statute an attempt to rob. The offense of burning one's own building with the attempt to prejudice the insurer, was not a common law offense like arson, but was made a crime by statute. The blackmail statute, like all other criminal statutes, is to be strictly construed, and its language is not to be extended beyond its fair interpretation to the prejudice of the accused. The indictment, to be good against demurrer, it is not necessary to say, must charge a crime against the defendants. It is not sufficient that the language of the indictment may possibly advise the defendants of the general nature of the charge that the State makes against them. No man can be put on trial for a felony under the Constitution and law of this state, until an indictment has been found against him, charging him with some crime.

This indictment sets forth, first, that the defendants accused Dr. Noble of arson, but that can not be considered in deciding this question, because it appears from the indictment that it was not arson that they threatened to accuse him of. The averment in the indictment was that they threatened to acuse him of burning his own hotel unless he gave them this money. That is the sum and substance of the charge in the indictment. Is this language sufficient to charge that the defendants threatened Noble—threatened to accuse him of the commission of a crime? The indictment does not aver that this property was insured in any sum; it does not aver that the defendants threatened to accuse Noble with burning his property with the intent to prejudice the insurers. It is not a crime under the statute, under Section 6832, Revised Statutes, or any other statute of this state, for a man to burn his own building, unless it is insured. There may be reasons why a man might wish to get a building out of the way. Many reasons may be suggested; the burning of it might be the most inexpensive and expeditious way of removing it. There is no law in the state, either of statute or case law, to prohibit a man thus disposing of his own property. There is nothing sacred about a house or building that prevents one

from burning his own so long as he does not endanger the property of others.

It is averred in the indictment that the defendants threatened to accuse him of burning this building with intent to defraud. There is not, however, any statute in this state making it a crime to burn a building with intent to defraud. A building may be burned with intent to defraud a mortgagee, or it might be burned with the intent to deprive a woman of her dower; but there is no statute on the subject. It might be malicious destruction of property, but no such charge as that is made.

It is settled in this state, by a decision of the Supreme Court, that an indictment under the blackmailing statute must charge that the defendant accused another of a crime or threatened to accuse him of a crime, and the allegation in the indictment must be sufficient to show that a crime was charged. A case was cited by counsel for the State, *Elliott* v. *State,* 36 Ohio St., 318, to the effect that it was not necessary to set forth the amount of the insurance. That is undoubtedly true. The first paragraph of the syllabus is:

"An indictment under Section 22, Chapter 3, Title 1, of the Penal Code of 1877, as amended (76 O. L., 167, 168), which specifically charges that A, B and C, with the intent to extort and gain a certain amount of money, of the value of $500, and certain valuable securities of the value of $300, the property of W, did willfully and feloniously accuse W of the crime of burning his barn, which was insured, and was of the value of $350, with intent thereby to prejudice the insurer, is not defective for want of any of the following averments:

"1.   For want of averment that the accusation against W was *false.* The truth or falsity of the accusation made by defendant is not an essential element of the crime.

"2.   Nor because it does not state the name of the insurer of the amount of the policy."

But the indictment did charge that the building that the person was accused of burning was insured, and that he was accused of burning it with intent to prejudice the insurer. The case of *Mann* v. *State,* 47 Ohio St., 556 (26 N. E. Rep., 226; 11 L. R. A., 656), is directly in point. The first paragraph of the syllabus is:

"In an indictment under Section 6830, Revised Statutes, for verbally accusing another of a crime punishable by law, to-wit,

administering poison to and thereby killing two colts, the property of the defendant with the intent to extort and gain from the accused certain chattel property and pecuniary advantage, the words 'punishable by law' are not a sufficient averment of the crime, but the act of which the party was accused must be alleged as having been done maliciously, and with intent to injure and destroy the animals, and without such allegation the indictment is insufficient."

The court, through Judge Dickman, say in the opinion, on page 560:

"To accuse one of administering poison to and killing a colt or other domestic animal, the property of another, without further imputation of criminal intent, is not to accuse one of a crime under the statute. The poison may have been administered accidentally, or through a mistake. By Section 6852, Revised Statutes, it is a crime punishable by fine or imprisonment to *maliciously* administer poison, of any sort whatever, to any foal, filly, or other domestic animal therein referred to, the property of another, with intent to injure or destroy the same. And Section 6851, Revised Statutes, also subjects to fine or imprisonment any person who *maliciously* kills any such animal, the property of another. Such administration of poison and thereby killing, must be attended with the element of malice to constitute the statutory crime. It is charged in the indictment, that the defendant, with the intent to extort and gain from William Brigham and Almyra Brigham, his wife, certain chattel property and a pecuniary advantage, unlawfully and knowingly did verbally threaten and accuse them of having committed the crime of administering poison to and killing the two colts, but not having done so maliciously, unlawfully, or knowingly. There is, indeed, no allegation in the indictment that the defendant accused them of a crime of which they could be legally convicted and punished. It is the ancient rule of our law, often reiterated, that penal statutes are to be construed strictly, and can not be extended by implication to cases not falling within their terms."

And the court hold that this indictment was bad. They say further in the opinion, page 561:

"It is urged in argument, that in alleging the offense in the indictment, it is safe to use the words of the statute; but, as said in *Hagar* v. *State*, 35 Ohio St., 268, while in charging an offense in an indictment it is not good practice to omit the words of the statute, it is not to be inferred that an indictment which simply pursues the language of the statute is sufficient, for in many cases something more is required. If in the case at bar, the defendant

had been charged only with having made accusation of a crime with intent to extort, without specifying the crime, the indictment would manifestly have been insufficient. It was requisite, therefore, to supplement the words of the statute with a description of the crime, as it may have been intended to do in the indictment, but in which the crime in fact is insufficiently alleged."

So it is held in this case that it is necessary in such an indictment as this to describe the crime, by sufficient allegations, which it was threatened to accuse the person of. The indictment here does not show, and it is not alleged, taking the indictment altogether, that these defendants accused or threatened to accuse Dr. Noble of the commission of any crime known to the laws of the state of Ohio. It may have been intended, and probably was intended, as the Supreme Court say in *Mann* v. *State, supra,* to describe the crime that it was claimed the defendants threatened to accuse Dr. Noble of, but the language in the indictment is not sufficient to do so; there is no allegation that the property was insured and no allegation that Noble was threatened with being accused or was accused of burning property with intent to prejudice the insurer. For these reasons it seems to us very clear that the demurrer to the indictment should have been sustained, and that the court therefore erred in overruling the demurrer.

It was urged by counsel for plaintiff in error that the court erred in not sustaining the motion to quash the indictment, for the reason that two offenses are stated in the indictment instead of one, to-wit, the offense of threatening to accuse verbally on April 24, and the offense of threatening to accuse in writing on April 26. In view of our opinion on the sufficiency of the indictment, it will not be necessary to discuss this question at any length. We are of the opinion, however, that the indictment is not bad for duplicity; that it does, in fact, only charge one offense. The gist, the gravamen, of the offense charged here is the attempt to extort money. It was formerly called an attempt to rob, as I have already stated. What, according to the indictment, the defendants were intending and attempting to do was to extort money from Dr. Noble by means of threats, as one might be charged with robbery, that by means of force and violence he robbed "A," and in such a case it is not necessary to set forth the force and violence, nor the threats he used. The verbal threats occurred on April 24. They refer to a fu-

ture meeting. The letter on the twenty-sixth refers to what had already been done, and it seems to us that it was a continuous transaction—that it was one transaction. If one of these parties, or both of them, had met Dr. Noble on one day and had used the language set forth in the indictment verbally and said they would see him again shortly, and had met him within a short time after and had used the language set forth in the letter, it seems to us it would be one transaction. The fact that two days intervened does not vary the principle. It was one attempt to extort money from Dr. Noble by the use of threats. We hold, therefore, the indictment was not bad for duplicity.

We find some authorities holding that it is not necessary to set forth the language used, in the indictment. On the other hand, Wharton lays down the principle that it is necessary when the threats are in writing. It is not necessary for us to pass upon this in deciding this case, in view of our holding upon the sufficiency of the indictment, as heretofore stated. But we may say that so far as we have discovered, there is no authority holding that where the threats are verbal, it is necesary to set them forth in the indictment, but the authorities that we have examined hold that it is not necessary to set forth the language of verbal threats, but that their substance is sufficient.

It is not necessary for us to discuss the weight of the evidence. We hold that the indictment does not charge a crime. The court erred in overruling the demurrer, and there being no legal indictment, the judgment of the court of common pleas must be reversed, and the defendants discharged.

There is another matter about which I should say a word. The indictment, after charging the alleged offense, contains this: "which said act and crime is punishable under the laws of Ohio by imprisonment in the penitentiary, and which if true would tend to disgrace and degrade him, the said Cyrus W. Noble." These allegations are mere conclusions of the pleader upon the facts stated in the indictment. The language alleged to have been used by defendants does not show that the offense charged was one punishable by imprisonment in the penitentiary, and does not show that, if true, it would tend to degrade or disgrace Dr. Noble. It would not tend to disgrace or degrade a man to charge that he burned his own

building, unless the charge contained the elements of a crime, or some other element which it would be necessary to plead, showing the transaction was of such a character that the charge would have a natural tendency to degrade and disgrace a man.

Nothing of that kind is alleged in the indictment. The charge that Dr. Noble burned the building with intent to defraud, or the threat to accuse him of that, is not sufficient; no facts are set forth showing that the burning of the building would defraud anyone, and the mere charge that he burned the building "with intent to defraud," without stating how, or whom, is not sufficient.

The judgment is reversed and the defendants discharged.

*James O. Troup,* for plaintiffs in error.

*E. G. McClelland,* Prosecuting Attorney, and *F. A. Baldwin,* for the State.